IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL ACTION NO. 1:20-CV-00024-KDB

| | |
|---|---|
| LYMAN KEITH MONTEITH, | |
| Plaintiff, | |
| v. | **ORDER** |
| ANDREW M. SAUL, | |
| Defendant. | |

**THIS MATTER** is before the Court on Plaintiff Lyman Keith Monteith's Motion for Summary Judgment (Doc. No. 12) and Defendant's Motion for Summary Judgment (Doc. No. 14). Mr. Monteith, through counsel, seeks judicial review of an unfavorable administrative decision denying his application for a period of disability and disability insurance benefits under the Social Security Act.

Having reviewed and considered the parties' written arguments, the administrative record, and applicable authority, and for the reasons set forth below, Plaintiff's Motion for Summary Judgment is **DENIED**; Defendant's Motion for Summary Judgment is **GRANTED**; and the Commissioner's decision is **AFFIRMED**.

**I. BACKGROUND**

On May 19, 2016, Plaintiff filed applications for a period of disability and disability insurance benefits under Title II of the Social Security Act, alleging that he had been disabled since January 31, 2016. (*See* Tr. 15). Plaintiff's applications were denied initially and upon reconsideration. (*See id*.). After conducting a hearing on July 19, 2018, Administrative Law Judge Gregory Wilson (the "ALJ") denied his applications in a decision dated January 7, 2019. (Tr. 12-

1

28). On November 25, 2019, the Appeals Council denied Plaintiff's request for review. (*See* Tr. 1). The ALJ's decision now stands as the final decision of the Commissioner, and Mr. Monteith has timely requested judicial review pursuant to 42 U.S.C. § 405(g).

## II. THE COMMISSIONER'S DECISION

The ALJ followed the required five-step sequential evaluation process established by the Social Security Administration to determine if Mr. Monteith was disabled under the law during the relevant period.[1] At step one, the ALJ found that Mr. Monteith had not engaged in substantial gainful activity ("SGA") since his alleged onset date and at step two that he had several medically determinable and severe impairments: ventricular and supraventricular tachycardia, cardiac sarcoidosis, and obesity. (Tr. 17). However, the ALJ found at step three that none of Plaintiff's impairments, nor any combination thereof, met or equaled one of the conditions in the Listing of Impairments at 20 C.F.R. Pt. 404, Subpt. P, App. 1. (*See* Tr. 19-21).

The ALJ then determined that Mr. Monteith had the residual functional capacity (RFC) to perform a restricted range of medium exertional work as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work (lift, carry, push, or pull 50 pounds occasionally and 25 pounds frequently; stand or walk 6 hours in an 8-hour workday; and sit 6 hours in an 8-hour workday), as defined in 20 CFR 404.1567(c) except with the following limitations: never climb ladder/rope/scaffolds; occasionally climb ramp/stairs and crawl; frequently crouch; and avoid

---

[1] The required five-step sequential evaluation required the ALJ to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(a)-(g) and 404.1520(a)-(g). The claimant has the burden of production and proof in the first four steps, but the Commissioner must prove the claimant is able to perform other work in the national economy despite his limitations. *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015).

concentrated exposure to temperature extremes; hazards; and fumes, odors, dust, gases, and unventilated environments.

(Tr. 21).

At step four, the ALJ found that Plaintiff was unable to perform his past relevant work as a dump truck driver, (*see* Tr. 26), and at step five concluded that jobs (including box bender, egg packer and meat clerk) existed in significant numbers in the national economy that Plaintiff — given his age (60), education (at least a high school education), work experience (unskilled) and RFC — could perform. (*See* Tr. 27). Thus, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act from January 31, 2016 through the date of his decision. (*See* Tr. 28).

### III. LEGAL STANDARD

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner *de novo*. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

The Social Security Act provides that "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[2]

*See also Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence.").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456; *see also Smith*, 795 F.2d at 345; *Blalock*, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

## IV. DISCUSSION

The basis for Mr. Monteith ' appeal is his contentions that the ALJ erred in according only "some weight" to treating physician Dr. Mahar's opinion (Tr. 25), giving "little weight" to the opinion of consultative examiner and internist Dr. Tim Johnston (Tr. 24) and not giving greater weight to Plaintiff's subjective complaints and the testimony of Plaintiff's wife. ( Tr. 21, 23-24). Thus, according to Plaintiff, the ALJ's RFC determination is not supported by substantial

---

[2] As the Fourth Circuit very recently noted, "[s]tandards are easy to recite, but harder to apply. Part of that difficulty … lies with confusing terminology like 'a scintilla of evidence.' After all, what in the world is a 'scintilla?' … [D]ating back to the nineteenth century, courts have struggled with the 'distinction between what is a scintilla' and what is not. *Boing v. Raleigh & G.R. Co.*, 87 N.C. 360 (N.C. 1882) (remarking that the distinction 'is so narrow that it is often very difficult for a court to decide upon which side of the line' evidence falls). Recognizing this difficulty, current South Carolina Supreme Court Justice John C. Few once remarked, in jest, that 'scintilla is Latin for "whatever a judge wants it to mean."' … To overcome the vagaries inherent in the term 'scintilla,' courts should not only recite our well-settled standards … but also actively engage with the [relevant underlying evidence] in analyzing the arguments of the parties." *Sedar v. Reston Town Ctr. Prop., LLC*, No. 19-1972, 2021 WL 667088, at *3 (4th Cir. Feb. 22, 2021).

evidence, and he asks that this matter be remanded for further administrative proceedings, including a *de novo* hearing and decision.

More specifically, Plaintiff argues that the ALJ improperly discounted or "reject[ed]" the opinions of Dr. Mahar and Dr. Johnston, "without providing appropriate reasons." "An ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies, or has not given good reason for the weight afforded to a particular opinion." *Koonce v. Apfel*, 166 F.3d 1209, at *2 (4th Cir. 1999) (table) (citations omitted). Also, a physician's opinion is afforded significantly less weight if it is not supported by clinical evidence or if it is inconsistent with other substantial evidence. 20 C.F.R. §§ 404.1527(3), (4). For the reasons discussed below, the Court finds that substantial evidence supports the ALJ's consideration of the medical evidence and thus declines Mr. Monteith's request to find that the ALJ erred in doing so.

There were four primary medical opinions in the record considered by the ALJ. Plaintiff treated with primary care physician Dr. Matthew A. Mahar and cardiologist Dr. John D. Rhyner throughout the relevant period. Mr. Monteith was also examined once by "consultative examiner" Dr. Tim Johnston in July 2016, and State Agency medical consultant Dr. Martin Rubinowitz reviewed Plaintiff's medical file on November 9, 2016. The ALJ gave the most weight to Mr. Monteith's cardiologist Dr. Rhyner and Dr. Rubinowitz. He gave Dr. Mahar's opinion "some weight" and Dr. Johnson's opinion "little weight."

Given the fact that Plaintiff's primary medical issues relate to his heart conditions, his cardiologist Dr. Rhyner's evidence was understandably the focal point of the ALJ's decision. In August 2016, Dr. Rhyner gave his opinion that "Plaintiff's cardiovascular impairment causes him to fall within the NYHA Classification of 1, with no limitation of physical activity, and that

ordinary physical activity does not cause undue fatigue, palpitation or dyspnea." (Tr. 25) Then, on November 2, 2016, Dr. Rhyner reported that Plaintiff indicated he "is doing well" and performing light exercises without difficulty following the implant of his defibrillator on February 5, 2016. (Tr. 524). At that time, Dr. Rhyner also noted that Plaintiff denied "dyspnea, edema, orthopnea, palpitations or pre-syncope and syncope." *Id*. In turn, Dr. Rabinowitz relied on Dr. Rhyner's findings and the NYHA Classification 1 to determine that Plaintiff could, in his opinion, perform medium exertional work.

With respect to Dr. Mahar, the ALJ explained that his decision to give only "some weight" to his March 2016 opinion suggesting lighter exertional work was grounded on his determination that "based on the objective evidence" (including Dr. Rhyner's opinion discussed above) and the Plaintiff's statements about his daily activities a "less than medium RFC with additional … limitations" is more reasonable. The Court finds this conclusion to be supported by substantial evidence. The disability regulations generally allow more weight to be given to a treating specialist regarding evaluation of a condition in that specialist's field of expertise. See 20 CFR 404.1527(c)(5). Further, in his own opinion, Dr. Mahar deferred to more specialized medical care from Dr. Rhyner. (Tr. 447). Again, this deference to Dr. Rhyner's opinion makes sense because Plaintiff's medical issues related primarily to his heart conditions being treated and managed by Dr. Rhyner.

Moreover, Plaintiff's description of his daily activities provides additional support for the ALJ's position. At the July 2018 hearing, the claimant testified that since January 2016 he has performed the following "Activities of Daily Living":

> drives, folds clothes, sweeps the carport, takes out the trash weekly, cleans the kitchen once in a while, cleans the living room, cuts the grass, picks up outside, tries to exercise by walking at least half a mile every day, attends church weekly, visits relatives and family, and goes to the grocery store and out to eat. He stated that he last fished for trout in probably 2017, went to Kentucky for a vacation, and has washed dishes and vacuumed approximately twice. He stated that he watches

6

> TV or reads the Bible when he takes breaks. He stated that sometimes his wife reminds him to take his medications.

(Tr. 24). The Court notes that Plaintiff also reported walking "1-2 miles daily" and using a "riding lawnmower." (*Id*.) While Plaintiff argues that these activities are more consistent with a finding that Plaintiff should have been limited to "light" rather than "medium" work, the Court cannot find that the ALJ's judgment that Dr. Mahar's opinion be given "some" rather than "controlling" weight is not at least supported by substantial evidence, particularly given Plaintiff's treating cardiologist's more optimistic assessment of Plaintiff's condition.

Plaintiff also criticizes the ALJ's decision to give "little weight" to the opinion of osteopathic SA consultant Dr. Tim Johnston (Tr. 24). Dr. Johnson's opinion was rendered in July 2016, which was before Dr. Rhyner's issued his opinions discussed above and the November 2016 opinion of Dr. Rubinowitz. Moreover, as explained by the ALJ, Dr. Johnson predicates his opinion on the plaintiff's reported increased fatigue, which is contradicted in part by several other treatment records noting no fatigue (Tr. 25). Indeed, Dr. Johnston's physical examination revealed normal findings (Tr. 481-483). Therefore, Dr. Johnston's "impression" that plaintiff cannot do even "minimal work activity" because of fatigue is based solely upon plaintiff's subjective complaints and not on his own normal objective findings. Accordingly, the ALJ could find, based on substantial evidence, that Dr. Johnston's opinion – based on a single "normal" examination held prior to the critical assessments of his treating cardiologist which found otherwise – was entitled to little weight.

The Court also finds there is substantial evidence in the record to support the ALJ's decision to discount in part the Plaintiff's primary subjective complaint of fatigue, which the ALJ found to be "not entirely consistent" with the objective medical evidence (including Plaintiff's own reports to his doctors) and his litany of daily activities. (Tr. 21, 24). Again, the Court is not

7

free to substitute its judgment for the ALJ's, where there is substantial evidence in the record to support the ALJ's decision.

Finally, the Court will, with a significant caveat, affirm the ALJ's decision to give "little weight" to Plaintiff's wife's hearing testimony. As to the ALJ's determination that Ms. Monteith's testimony was inconsistent with the evidence (for the same reasons as discussed above with respect to the Plaintiff), the Court finds that substantial evidence supports that finding. However, (and while it is harmless error in the full context of the ALJ's decision), the ALJ's "additional" reasons to discount Ms. Monteith's testimony are erroneous. The ALJ stated:

> Additionally, she appears to be sympathetic to the claimant and invested in the outcome because she is the claimant's wife and has a vested interest in him obtaining disability benefits. Furthermore, she is not a medical expert, and based her opinions on the claimant's subjective complaints, and not the objective medical evidence.

(Tr. 26). The regulations require the ALJ to consider *all* evidence, including statements from *nonmedical* sources regarding Plaintiff's symptoms and limitations. 20 C.F.R. § 404.1529(c)(3).

Thus, while an ALJ may evaluate the credibility of hearing witnesses based on the manner and content of their testimony, the ALJ may not discredit the testimony of the Plaintiff's wife simply on the basis of inherent familial bias. *See Morgan v. Barnhart*, 142 F. App'x 716, 724 (4th Cir. 2005); *Lara v. Colvin*, NO. EDCV 12-00693-MAN, 2013 WL 4763652 (C.D. Cal. Sep. 4, 2013) ("[t]he fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony. To the contrary, testimony from lay witnesses who see the claimant every day is of particular value . . . ; such lay witnesses will often be family members." *Smolen*, 80 F.3d at 1289; *see also Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009) (finding that being an interested party in the abstract was insufficient to reject a spouse's testimony)"). Indeed, if ALJs were permitted to reject the testimony of all family members as inherently biased and "non-

medical" the Commissioner would regularly fail to consider important relevant evidence of a claimant's limitations from those who have frequent opportunities to observe the claimant in his or her home environment and elsewhere.

In sum, with a claimant's relatives (as well as the claimant) the ALJ may appropriately evaluate the credibility of their testimony in light of all the evidence but must always fully consider their evidence fairly with an open mind in accordance with the Social Security Act and its regulations. *See Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 98 (4th Cir. 2020) (In evaluating a disability claim, "[a]n ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding."). Again, however, notwithstanding the erroneous additional reason given by the ALJ for giving "little weight" to Ms. Monteith's testimony, there is ample evidence for the Court to conclude that the ALJ's ultimate conclusion is supported by substantial evidence and must be affirmed.

### IV. CONCLUSION

While the Court does not reach any conclusion as to how it would rule on Plaintiff's claim on a *de novo* review, a reasonable mind would find that the evidence is adequate to support the ALJ's decision. The decision of the ALJ, therefore, is hereby **AFFIRMED.**

**SO ORDERED ADJUDGED AND DECREED**.

Signed: March 5, 2021

Kenneth D. Bell
United States District Judge

9

Case 1:20-cv-00024-KDB   Document 16   Filed 03/05/21   Page 9 of 9